PEOPLE v BLAKELY

1. Criminal Law—Probation—Violation—Preliminary Hearing—
Probable Cause—Arrest.

A probationer, upon arrest for probation violation, is entitled to a
preliminary hearing to determine whether there is probable
cause to believe he has committed acts that would constitute a
violation of probation conditions.

2. Criminal Law—Probation—Violation—Preliminary Hearing—
Revocation Hearing—Probable Cause—Due Process.

Some minimal inquiry into probable cause to believe a proba-
tioner has violated his probation must be conducted at or
reasonably near the place of the alleged probation violation or
of the arrest and as promptly as convenient after arrest while
information is fresh and sources are available; however, due
process is satisfied, in the absence of a preliminary examina-
tion, where the actual revocation of probation hearing is held
sufficiently close in time and place to the arrest of the proba-
tioner for probation violation.

3. Criminal Law—Probation—Revocation Hearing—Due Process
—Minimum Requirements.

Due process requirements for a revocation of probation hearing
include: (1) written notice of the claimed violations of proba-
tion, (2) disclosure to the probationer of evidence against him,
(3) opportunity to be heard in person and to present witnesses
and documentary evidence, (4) the right to confront and cross-
examine adverse witnesses, unless the hearing officer specifi-
cally finds good cause for not allowing confrontation, (5) a
neutral and detached hearing body, and (6) a written statement
by the fact finders as to the evidence relied on and reasons for
revoking probation.

References for Points in Headnotes
[1–4] 59 Am Jur 2d, Pardon and Parole §§ 92–95.
Right to notice and hearing before revocation or suspension of
sentence, parole, conditional pardon, or probation. 29 ALR2d
1074.

4. CRIMINAL LAW—PROBATION—REVOCATION HEARING—PRELIMINARY
    HEARING—PREJUDICE.

   Failure to provide a preliminary hearing on a charge of probation
   violation was not error where the probationer was arraigned on
   the same day he was arrested, the probationer was twice
   granted an adjournment of the revocation hearing, and he was
   not prejudiced.

Appeal from Recorder's Court of Detroit, Samuel
C. Gardner, J. Submitted Division 1 April 18, 1975,
at Detroit. (Docket No. 19643.) Decided June 23,
1975.

Fred Blakely was convicted, on his plea of
guilty, of larceny under $100 and he was placed on
probation. Probation revoked. Defendant appeals.
Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Patricia J. Boyle,* Principal
Attorney, Research, Training, and Appeals, and
*Michael R. Mueller,* Assistant Prosecuting Attor-
ney, for the people.

*Sol Plafkin* and *Rose Mary C. Robinson,* for
defendant.

Before: J. H. GILLIS, P. J., and QUINN and R. M.
MAHER, JJ.

R. M. MAHER, J. Defendant pled guilty to the
crime of larceny under $100, MCLA 750.356; MSA
28.588, on May 15, 1973. He was sentenced to one
year probation with payment of $50 in costs.

On December 13, 1973, defendant's probation
officer filed a notice of probation violation which
alleged the following:

" * * * That Fred Blakely has violated the terms of his probation as follows:

"1. Defendant last reported September 6, 1973.

"2. He has paid nothing to date toward court assessments.

"3. Last home call 11-5-73 writer left card in door. Defendant has failed to respond to contact made.

"4. There is also a capias issued by Judge Henry Heading for failing to appear in court on the charge of larceny under $100, Docket No. 73-54412."

The notice requested that a warrant be issued for defendant's arrest pending a hearing and a warrant was approved on December 17, 1973.

Defendant was arrested and arraigned on the warrant for violation of probation on January 7, 1974. Defendant indicated that he was attempting to enter the armed forces and, at his request, the hearing on the probation violation was adjourned until February 7, 1974 in order for defendant to pursue that option. Defendant was released on personal bond.

A hearing was held on February 7, 1974. A court aide from the department of probation was called to testify. However, on cross-examination by defense counsel, it was determined that she had not prepared the probation violation report and the hearing was recessed until February 25, 1974, in order to have defendant's probation officer brought into court. A $1,500 surety bond was set.

Defendant was unable to post the bond. However, through a habeas corpus proceeding, defendant was able to have it reduced. Defendant was released on February 8, 1974, after posting a $1,000 personal bond.

A full hearing, at which defendant was represented by counsel, was held on February 25, 1974.

Defendant's aunt, with whom defendant was living, testified that they never received any notices from the probation department. She stated that defendant's failure of the literacy test prevented him from joining the army but that defendant had a good chance of getting into a job corps program. Defendant's probation officer testified that defendant neither reported to him nor paid court costs as required by the terms of his probation and that a capias had been issued on a new charge of larceny. The judge found defendant in violation of probation and sentenced him to 90 days in the Detroit House of Correction. Defendant served 50 days of his sentence before being granted personal bond pending this appeal.

A probationer is entitled to a preliminary hearing "to determine whether there is probable cause or reasonable ground to believe that the arrested [probationer] has committed acts that would constitute a violation of [probation] conditions". *Morrissey v Brewer,* 408 US 471, 485; 92 S Ct 2593; 33 L Ed 2d 484 (1972), as applied to probation revocation proceedings in *Gagnon v Scarpelli,* 411 US 778, 782; 93 S Ct 1756; 36 L Ed 2d 656 (1973).

" * * * [T]he [probationer] should be given notice that the hearing will take place and that its purpose is to determine whether there is probable cause to believe he has committed a [probation] violation. The notice should state what [probation] violations have been alleged. At the hearing the [probationer] may appear and speak in his own behalf; he may bring letters, documents, or individuals who can give relevant information to the hearing officer. On request of the [probationer], a person who has given adverse information on which [probation] revocation is to be based is to be made available for questioning in his presence. However, if the hearing officer determines that an informant would be subjected to risk of harm if his identity were dis-

closed, he need not be subjected to confrontation and cross-examination.

"The hearing officer shall have the duty of making a summary, or digest, of what occurs at the hearing in terms of the responses of the [probationer] and the substance of the documents or evidence given in support of [probation] revocation and of the [probationers] position. Based on the information before him, the officer should determine whether there is probable cause to hold the [probationer] for the final decision * * * on revocation. Such a determination would be sufficient to warrant the [probationer's] continued detention and return to the state correctional institution pending the final decision." *Morrissey v Brewer, supra,* 408 US at 486–487.

The United States Supreme Court, however, was not establishing an inflexible structure for probation revocation procedures. *Morrissey v Brewer, supra,* 408 US 471, 487, 490. Where the actual revocation hearing is held sufficiently close in time and place to the arrest, due process would appear to be satisfied. The reason for such a preliminary hearing is explained in *Morrissey v Brewer, supra,* 408 US at 485:

"There is typically a substantial time lag between the arrest and the eventual determination * * * whether [probation] should be revoked. Additionally, it may be that the [probationer] is arrested at a place distant from the state institution, to which he may be returned before the final decision is made concerning revocation. Given these factors, due process would seem to require that some minimal inquiry be conducted at or reasonably near the place of the alleged [probation] violation or arrest and as promptly as convenient after arrest while information is fresh and sources are available."

The revocation hearing is the basis for more than a determination of probable cause. This hear-

ing leads to a final determination of whether the terms of defendant's probation have been violated and whether such violation warrants revocation. Due process calls for certain minimum requirements:

"They include (a) written notice of the claimed violations of [probation]; (b) disclosure to the [probationer] of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body * * * ; and (f) a written statement by the fact finders as to the evidence relied on and reasons for revoking [probation]." *Morrissey v Brewer, supra,* 408 US at 489.

In the present case, defendant was given written notice of the claimed violations of probation when he was served with a notice on January 7, 1974. At the revocation hearing itself, all the evidence against defendant was disclosed and defendant was given an opportunity to confront and cross-examine the witnesses against him as well as to be heard in person and present evidence in his behalf. The trial judge was an impartial fact finder in the sense used in *Morrissey v Brewer, supra,* and the judge's statements on the record satisfy the requirement for a reviewable recitation of the evidence relied on and reasons for revoking defendant's probation. Therefore, the hearing held on February 25, 1974, satisfied the due process requirements for a final revocation determination. In light of these facts, the question then becomes whether revocation of defendant's probation should be set aside on the grounds that he did not receive a preliminary determination as to whether

there was probable cause to believe that he violated the terms of his probation.

Defendant in this case did not receive a preliminary hearing. There was no formal determination as to whether reasonable grounds existed for revocation of his probation. At arraignment on the warrant for violation of probation, the same day as his arrest, defendant requested an adjournment of a hearing on the alleged probation violation so that he could join the armed services. Defendant failed the literacy test, however, and a month later, on February 7, 1974, he appeared for the hearing on the violation of probation. At that hearing, defendant objected to the presentation of the case by someone other than defendant's probation officer on grounds of hearsay. The court adjourned the hearing until defendant's probation officer could be present and defendant was released the following day after posting bond. Perhaps it would have been better practice, at that point, for the court to have made an on-the-record determination as to whether there was probable cause to believe that defendant violated the conditions of his probation and whether an adjournment was even necessary. The testimony elicited at that proceeding certainly made such a showing. However, defendant wanted to question his probation officer. This he would be entitled to do at either a preliminary hearing or a revocation hearing. See *Morrissey v Brewer, supra,* 408 US 471, 487, 489. The trial court adjourned the hearing "until we get the person who wrote [the violation of probation report]" and upon "getting" that person, conducted the revocation hearing. We are unable to find, under these circumstances, how defendant has been prejudiced in any way by the absence of a distinct and identifiable probable

cause hearing. See *Callison v Dept of Corrections,* 56 Mich App 260, 264–265; 223 NW2d 738 (1974). Affirmed.